IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 1:20-cr-135 |
| | ) | Hon. Anthony J. Trenga |
| ABEL AMBROCIO, | ) | Sentencing:  August 4, 2021 |
| | ) | |
| Defendant. | ) | |

### DEFENDANT'S POSITION ON SENTENCING

Abel Ambrocio comes before the Court for sentencing for production of child pornography, an offense which carries a fifteen-year mandatory minimum sentence. Mr. Ambrocio is deeply ashamed of his conduct and has accepted full responsibility for his actions in this case.  While there is no dispute regarding the advisory guideline range computed by Probation, the child pornography guideline is inherently flawed and should not be entitled to deference in this case.  There is no dispute that this is a serious case. Indeed, the offense of conviction requires a lengthy period of incarceration in all cases. As a result, the issue is not whether to impose a lengthy sentence, because one is required regardless.  Rather, it is determining the minimum available sentence that satisfies the purposes of sentencing.  For a number of reasons, the record supports a sentence of no more than fifteen years of incarceration along with mandatory registration as a sex offender.  Such a sentence is appropriate in light of Mr. Ambrocio's personal history, criminal history category of I, the nature of this offense, the significant collateral consequences that result from this prosecution, and the sentences imposed in this district for similarly situated defendants.  Finally, Mr. Ambroicio is paraplegic and will face deportation from this country after the completion of his sentence.  Mr. Ambrocio's physical condition, paralyzed from the waist down, and his status as an illegal immigrant

will undoubtedly present a hardship in terms of the service of a prison sentence, which the defense asks this Court to weigh in crafting an appropriate sentence.  Indeed, Mr. Ambrocio has already spent the last fourteen months at the Alexandria Detention Center ("ADC") struggling with caring for himself and receiving the proper care, in light of his physical limitations.  Additionally, Mr. Ambrocio's status as an illegal immigrant will prevent him from participating in the Bureau of Prisons' ("BOP") programming that is offered to non-illegal immigrants.

**I. The child pornography guideline is not entitled to deference in this case.**

Mr. Ambrocio agrees that, as a technical matter, the guidelines in the presentence report are correctly calculated.  However, the defense submits that the resultant guideline range of 720 months of incarceration (Offense Level 43, Criminal History Category I) would, if applied, result in a term of incarceration that is significantly more punitive than necessary to serve any legitimate goal of criminal punishment in this case and therefore, should not be the guiding principle.

As already noted, the statute of conviction in this case requires a lengthy sentence in all cases, ranging from a minimum of 15 years in prison to a maximum of 30.  That is because, at least since 18 U.S.C. § 2251(a) was added to the United States Code over 40 years ago, the federal code has distinguished between consumers of child pornography on one hand and producers of it on the other.  The law has, for at least the past 40 years, permitted substantial penalties for both types of offender but has required significantly greater penalties for producers (the current 15-year minimum sentence for production has been in effect since 2003).  Over those same 40 years, though, technology has blurred the lines between consumers and producers, as exemplified by the facts of this case.  Mr.

Ambrocio, for example, was a receiver of images produced thousands of miles away; he was never in the physical presence of children, and never participated in the marketing or selling of child pornography. In other words, Mr. Ambrocio could never have committed the offense of production in the absence of technological changes that have occurred in recent decades. That is not to say that his conduct does not violate the statute, that it should not be considered a violation, or that his conduct was not abhorrent, because as the government correctly points out, he *did* remotely participate in the abuse of children that was occurring in Honduras. But that should not obscure the fact that Mr. Ambrocio is still closer to a prototypical consumer than a classic producer of child pornography—he never attempted to meet children, never attempted to market or profit off of child pornography, and committed his conduct while alone in his home.[1]

That distinction alone differentiates this case from the mine-run offense covered by the production statute and militates in favor of a sentence toward the low end of the permissible sentencing range. And, of course, the statutory sentencing range of 15 to 30 years is meant to encompass all violators of the statute: from those like Mr. Ambrocio with a criminal history category of I (only criminal history is a few driving violations from over two decades ago), and who accept responsibility for their conduct to those with a

---

[1] Statistics maintained by the Sentencing Commission support this distinction: Over 78% of production offenders offend against children with whom they have a close, and likely in-person, relationship. *See* USSC 2012 Report to Congress: Federal Child Pornography Offenses, at 267 (Dec. 2012) ("USSC Rep.") (available at http://www.ussc.gov/research/congressional-reports/2012-report-congress-federal-child-pornography-offenses) (of approximately 200 production offenders studied, 78.6% were either a parent/guardian of the victim, otherwise in a position of trust with respect to the victim, or otherwise known to the victim, while 14.3% of victims met the offender through internet chatrooms and 7.1% of victims were unknown to the offender). In other words, only about one in seven production offenders are, like Mr. Ambrocio, consumers of child pornography who capture images of abuse over the internet. The vast majority of production offenders appear to be physically present during, and/or participate in, in-person sexual abuse of children.

3

lengthy criminal record who deny their conduct. These distinctions weigh in favor of a sentence toward the low end of the available statutory sentencing range in this case.

The Sentencing Guidelines, by recommending the maximum sentence in this case where the defendant has little to no criminal record and has accepted responsibility, render themselves irrelevant. That is because the Guidelines are fundamentally incompatible with the parsimony provision of 18 U.S.C. § 3553(a). Courts around the country and the Sentencing Commission itself have come to the conclusion that the child pornography Guidelines in general and the production Guideline in particular are so harsh as to result in advisory ranges near the top of the sentencing chart for even first-time non-violent offenders, thereby, affording scant distinction between types of offense conduct. *See* USSC Rep., Executive Summary, at ii (sentencing data indicates growing number of courts believe sentencing scheme for child pornography offenses is overly harsh); *id.* at xvii (percentage of within-guideline sentences for production offenders decreased steadily from 2004 to 2011, when only half of production sentences were within the range). Indeed, in the latest year for which statistics are available, nearly 60% of production cases resulted in downward variances. *See United States Sentencing Commission, 2017 Sourcebook of Federal Sentencing Statistics,* Table 28 (of 462 offenders sentenced under USSG 2G2.1 in 2017, 22 received reductions for substantial-assistance or above-range sentences; of the remaining 440, only 170 cases resulted in within-range sentences while 270 resulted in below-range sentences).[2] *See also United States v. Dorvee*, 616 F.3d 174, 184 (2d Cir. 2010) (discussing upward creep of Guidelines

---

[2]   Available at < https://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2017/Table28.pdf>.

in child pornography cases as a result of congressional mandate rather than empirical data and resulting risk of overly harsh penalties).

In other words, as this case illustrates, the Sentencing Guidelines simply fail to meaningfully differentiate between offenders in this sort of case. By recommending the maximum sentence on nearly every set of facts, the Guidelines provide the Court little guidance. Moreover, they effectively contradict the statutory mandate to impose the minimally sufficient sentence in each case that accomplishes the purposes of sentencing. Accordingly, this Court should give little weight to the advisory sentencing range.

## II. A sentence of 15 years is consistent with the type of sentences imposed in this district in similarly situated cases.

A sentence that includes 15 years of incarceration will avoid unwarranted sentencing disparities and is appropriate when compared to sentences previously imposed in this division for more aggravated conduct. Most notably, several defendants whose conduct included actual sexual abuse of minors received sentences at or near the 15-year mark. For example:

- In *United States v. Manring*, 1:13-cr-13 (CMH), the Court imposed a sentence of 14 years (168 months), followed by 3 years of supervised release, upon a 54 year-old defendant who had filmed himself performing sexual acts on his own students, who were roughly 5 years old, over a 3 year period in the late 1990s;

- In *United States v. Sara*, 1:17-cr-54 (AJT), the Court imposed a sentence of 14 years (168 months), followed by a lifetime of supervised release, upon a 63 year-old defendant who participated in contemporaneous instant message chatting and webcam live-streaming with adults in Philippines, including streams in which the adults purported to cause minors to engage in sexually explicit conduct, and who negotiated over the internet to have sex with an 8 year-old minor in the Philippines, engaged in chats with the minor, and traveled to the Philippines three months later, met the 8 year-old on that trip, and, according to the government, engaged in commercial sex with at least one minor in the Philippines during that trip;

- In *United States v. Friedel*, 1:14-cr-383 (TSE), the court imposed a sentence of 16 years (192 months), followed by 10 years of supervised release, upon a

5

- 29 year-old defendant who had enticed at least 5 minors to take and send him sexually explicit images of themselves, including one who he enticed to actually have sex with him (events that he recorded in videos and images), one to whom he distributed other child pornography, and multiple minors he threatened with exposure, jail, and parental abandonment if they did not cooperate with his demands;
- In *United States v. Velasquez*, 1:13-cr-89 (AJT), the Court imposed a sentence of 16 years (192 months), followed by 10 years of supervised release, upon a 25 year-old defendant who blackmailed a minor into stripping and masturbating online over a webcam so that he could make video recordings of her, who convinced other minors to engage in sexually explicit conduct on webcams so that he could produce child pornography, who traveled to see at least one minor he enticed online, who had previously been convicted of sexual intercourse with a child 16 years or older in Wisconsin just seven years before his federal offense, who fled the jurisdiction after being released pretrial, and who admitted to having gotten back on-line while a fugitive; and
- In *United States v. Collins*, 1:14-cr-26 (CMH), the Court imposed a sentence of 17 ½ years (210 months), followed by 5 years of supervised release, on a 45 year-old defendant who had recorded videos of himself engaged in sexual activity with his 11 year-old niece.

Of course, no two cases are identical, and there have been other offenders sentenced in this district who have received longer sentences. A review of such cases sentenced in this division over the last decade, however, reveals that, of defendants who received substantially longer sentences than requested here, every case involved one or more aggravating facts not present here, such as: the defendant engaging in in-person physical abuse of minors, distributing child pornography (including to minors), committing the offense after a prior sex offense conviction, denying responsibility and going to trial, using deception to persuade minors to produce pornography, and/or traveling or attempting to travel to have sex with a minor.

The offense conduct in this case involved neither physical contact nor any attempt to have physical contact with any minors. While Mr. Ambrocio does not dispute that it nonetheless caused a similar harm to minors—reflected by the lengthy mandatory

6

sentence to which he agreed—the facts of the offense, and Mr. Ambrocio's background, indicate that imposing a sentence above the mandatory minimum 15 years would result in an unwarranted sentencing disparity.

The primary directive of § 3553(a) is to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing. Pursuant to *United States v. Booker,* 543 U.S. 220 (2005), courts must consider the recommended guidelines range as only one of seven sentencing factors enumerated in 18 U.S.C. § 3553(a). *Id.* at 259-60. The Supreme Court has stressed that "the Guidelines are only one of the factors to consider when imposing sentence." *United States v. Gall,* 552 U.S. 38, 49 (2007).[3] Ultimately, the Court's punishment must "suit not merely the offense but the individual defendant." *Pepper v. United States*, 131 S. Ct. 1229, 1240 (2011) (citation omitted). After *Booker* and *Gall,* therefore, sentencing courts must impose the minimum sentence that is sufficient to accomplish the objectives of § 3553(a).

### III.  A sentence of 15 years achieves deterrence and promotes respect for the law.

Mr. Ambrocio is 55 years old. His criminal record consists of only three driving charges from over two decades ago. He has never spent more than a night in jail. Fifteen years of incarceration will certainly provide deterrence for Mr. Ambrocio and protect the public from future harm. In fact, if this Court imposes the mandatory minimum of 15 years, Mr. Ambrocio will be roughly 70 years of age by the time he emerges from prison.

---

[3] Those factors include: (a) the nature and circumstances of the offense and the history and characteristics of the defendant, (b) the kinds of sentences available, (c) the guideline range, (d) the need to avoid unwarranted sentencing disparities, (e) the need for restitution, and (f) the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence, to protect the public from further crimes of the defendant and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment. *See* 18 U.S.C. § 3553(a).

Following his term of imprisonment, Mr. Ambrocio will be turned over to Immigration and Custody Enforcement and eventually deported from the country. If not deported, Mr. Ambrocio will no doubt be subject to a significant period of supervised release and will have to register as a sex offender for the rest of his life. As a result, Mr. Ambrocio will not just face the standard obstacles confronted by all felons returning to society, but the even more significant challenges confronted by someone who is a registered sex offender. These substantial consequences in addition to a 15-year prison term are more than sufficient to punish Mr. Ambrocio for his conduct and to send a commanding message of deterrence. It is important to note that even the Department of Justice acknowledges that longer periods of incarceration do not result in increased deterrence. *See* USDOJ, National Institute of Justice, *Five Things About Deterrence* ("Increasing the severity of punishment does little to deter crime.").[4]

## IV. Conclusion

For the forgoing reasons, Mr. Ambrocio respectfully submits that the Court should impose a sentence including a term of imprisonment of no more than the 15 year mandatory minimum sentence to be followed by a term of supervised release. At the time of sentencing, Mr. Ambrocio will request a recommendation to a specific BOP facility commensurate with his treatment needs.

>Respectfully submitted,
>ABEL AMBROCIO
>By counsel,
>
>/s/_____
>Kevin E. Wilson
>Va. Bar No. 80033

---

[4] Available at < https://cdpsdocs.state.co.us/ccjj/Resources/Ref/NIC5Things_2014-07.pdf>.

8

Assistant Federal Public Defender
Office of the Federal Public Defender
1650 King Street, Suite 500
Alexandria, Virginia 22314
703-600-0860 (tel)
703-600-0880 (fax)
kevin.e.wilson@fd.org